# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| EDWARD AND CHRISTINE HESLING,<br><br>            Plaintiffs<br><br>  v.<br><br>THE AVON GROVE SCHOOL DISTRICT,<br><br>and<br><br>THOMAS SEIDENBERGER, former Superintendent of the Avon Grove School District, in his individual capacity,<br><br>            Defendants | CIVIL ACTION<br><br>No. 02-8565 |

|  |  |
|---|---|
| CHRISTINE HESLING,<br><br>            Plaintiff<br><br>  v.<br><br>AUGUSTUS MASSARO, et al.,<br><br>            Defendants | CIVIL ACTION<br><br>No. 03-5795 |

CHRISTINE HESLING,

                Plaintiff

    v.

THOMAS SEIDENBERGER, in his
official capacity as Superintendent for
the Avon Grove School District,

                Defendant

CIVIL ACTION

No. 04-4874

## OPINION

April 17, 2006

       The three above-captioned cases have been consolidated for pre-trial purposes.

Presently before this court are two motions: defendant's motion to dismiss, or

alternatively motion for summary judgment, in *Hesling v. Seidenberger*, #04-4874, and

plaintiff's objections to Chief Magistrate Judge M. Faith Angell's denial of leave to

amend her complaint in *Hesling v. Massaro*, #03-5795.

       For the reasons discussed in this opinion, defendant's motion to dismiss, or

alternatively motion for summary judgment, in *Hesling v. Seidenberger* will be granted,

and Judge Angell's denial of leave to amend plaintiff's complaint in *Hesling v. Massaro*

will be affirmed.

# I. BACKGROUND

## A. Facts

Edward and Christine Hesling have two children with learning disabilities, who qualify for special education services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* During the 2001-2002 school year, the Heslings invoked the administrative process available under the IDEA because of concerns about the educational services their children were receiving from the Avon Grove School District ("District"), in Chester County, Pennsylvania.

Ms. Hesling is also the founder of a special education advocacy parent group called ARConnections and a grassroots organization known as Project COPE ("Casualties of Public Education").

As of 2002, Ms. Hesling worked part-time on a freelance basis for the *Avon Grove Sun*, a local newspaper, covering Avon Grove School Board ("School Board") meetings and District activities. She asserts that, to avoid any conflict of interest, she did not report on topics related to special education.

On September 26, 2002 and October 17, 2002, articles by Ms. Hesling appeared in two local papers—the *Avon Grove Sun* and the *Daily Local News*—concerning the District's non-expenditure of funds set aside by the School Board for the hiring of teachers. The September 26th article was entitled "Class Sizes Spur Board Concerns," and stated that the "school board had previously approved and budgeted for six teaching

positions to be held in reserve" but that the "district administrators did not fill the positions" and this "prompted questioning of district Superintendent Dr. Thomas Seidenberger." Pl.'s Resp. to Def.'s Mot. to Dismiss *Hesling v. Seidenberger* ("Pl.'s Resp."), App. Ex. S.  According to the article, a Board member reported that the administrators failed to follow a directive "'to reduce classroom sizes by filling these teaching positions, if necessary . . . .'" *Id.* (quoting a Board member).

Ms. Hesling's October 17th article described a Board meeting which took place on October 10th and at which Assistant Superintendent Augustus Massaro reportedly "updated board members on the process underway to hire six additional teacher at Avon Grove Intermediate School." Pl.'s Resp., App. Ex. Y.  The October 17th article quoted administrators, who explained that the Board had been waiting for the school year to begin to confirm whether enrollment necessitated additional teachers and that the Board had already made some efforts to reduce class sizes.  *See id.*

On October 17, 2002, Dr. Seidenberger allegedly met with Mike Rellahan, the news editor for the *Daily Local News*, to inquire about the paper's "ethical standards." *See* Pl.'s Resp. at 10-11.  Ms. Hesling contends this meeting was a direct response to her September 26th article.  Deposition testimony of both Mr. Rellahan and Dr. Seidenberger indicates the meeting was very brief, and that there was some discussion of whether Ms. Hesling might have some conflict of interest.  *See* Mot. to Dismiss, App. Ex. J at 9, 12-

4

17; Pl.'s Resp., App. Ex. F. at 131-33.[1]

On October 20, 2002, a letter-to-the-editor by Sam Stretton, Esquire ("Stretton Letter")—identified below his signature as "attorney for a number of administrators at the Avon Grove School District"—was submitted to the *Avon Grove Sun* and *Daily Local News* for publication.  The Stretton Letter stated that Ms. Hesling had been involved in litigation with the District and was a special education advocate, and therefore had an "absolute conflict of interest."  The Letter alleged that Ms. Hesling's authorship of the article "concern[ing] the class sizes"[2] was misleading in light of her bias, and asserted that she should be disciplined: "[T]he public was misled by her article since the public assumes she was a neutral reporter when in fact she was a biased observer who had an undisclosed conflict of interest." Pl.'s Resp., App. Ex. CC.  The letter further asserted that no Board directive to hire more teachers had been passed, and alleged that Ms. Hesling's article inaccurately represented this point and was therefore unfairly critical.  *Id.*

The *Avon Grove Sun* and *Daily Local News* allegedly refused to publish the Stretton Letter. However, the letter was published in the *Chester County Press* on

---

[1] The uncontradicted testimony of Mr. Rellahan suggests that the meeting played some role in the paper's decision to investigate Ms. Hesling but states explicitly that the decision to remove Ms. Hesling from the school district beat was not in response to pressure from Dr. Seidenberger.  *See* Mot. to Dismiss, App. Ex. J at 32-33, 50.  Ms. Hesling has offered no evidence to counter Mr. Rellahan's testimony.  *See* Pl.'s Resp. at 10.

[2] Although the date of the article to which Mr. Stretton was responding was not specified in the letter, it appears that it was penned in response to Ms. Hesling's September 26th article.

October 30, 2002.  *See* Pl.'s Resp., App. Ex. EE.  Ms. Hesling reportedly submitted a response on November 12th, but it was not published.

Ms. Hesling's precise allegations regarding Dr. Seidenberger's role in the hiring of Mr. Stretton and the publication of the Stretton Letter vary somewhat among the three above-captioned cases.  Dr. Seidenberger claims he played no role in the commissioning or the publication of the Stretton Letter.

Ms. Hesling claims that as a result of the Stretton Letter she suffered the loss of career opportunities and emotional distress.

**B. Case Summaries**

1. Hesling v. Avon Grove School District et al., #02-8565

As noted *supra*, during the 2001-2002 school term, the Heslings invoked the IDEA's due process proceedings on behalf of their children.  The Heslings ultimately prevailed before a Pennsylvania Special Education Appeals Panel ("Appeals Panel") in August 2002.

In November 2002, the Heslings initiated this suit against the District and against Superintendent Seidenberger[3] in his individual capacity.  Initially, the suit was intended, in part, to contest the District's alleged failure to implement the Appeals Panel's August 2002 decision.  The Heslings and the District reached a settlement on that issue.  Mr. and Ms. Hesling also sought—and continue to seek, pursuant to their amended

_____

[3]Dr. Seidenberger is no longer Superintendent of the Avon Grove School District.

6

complaint—relief for alleged retaliation, including publishing deliberately false statements and interfering with Ms. Hesling's employment, in violation of federally-protected rights. *See* Amended Complaint in *Hesling v. Avon Grove School District* ("Am. Compl. I"). Mr. and Ms. Hesling allege that the Stretton Letter was the direct, desired result of actions taken by Dr. Seidenberger—"either on his own, or through other District administrators"—to retain Mr. Stretton's services. *See id.* ¶ 43; *see also id.* ¶¶ 46, 49.

For Ms. Hesling's alleged subsequent loss of career opportunities and her emotional distress, the Heslings seek damages and equitable relief under the IDEA, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the Americans with Disabilities Act of 1990 ("ADA"), and 42 U.S.C. § 1983 (based on the above-mentioned federally protected rights under the IDEA, Section 504, and ADA, as well as the First Amendment and the Equal Protection Clause of the Fourteenth Amendment).

        2. Hesling v. Massaro et al. #03-5795

Ms. Hesling initiated this suit for damages and a declaratory judgment in October 2003. The complaint names Acting Superintendent Augustus Massaro[4] and sixteen other District administrators—all in their individual capacities—as the defendants. Dr. Seidenberger is not a named defendant in this suit.

---

        [4]At the time of filing, Dr. Massaro was the Acting Superintendent of the Avon Grove School District; at the time of the events which are the subject of the complaint, Dr. Massaro was the Assistant Superintendent.

The factual allegations in this complaint are substantially identical to those recited in *Hesling v. Avon Grove School District.*  Ms. Hesling claims that each of the defendants defamed her and unlawfully retaliated against her, contrary to her First and Fourteenth Amendment rights and in violation of 42 U.S.C. § 1983.  Here, Ms. Hesling alleges that the various District administrators named in the suit "individually, collectively, and/or in concert or at the behest of District Superintendent Thomas Seidenberger," secured Mr. Stretton's services to write the Stretton Letter.  Complaint in *Hesling v. Massaro* ("Compl. II") ¶ 41.

On May 3, 2004, Ms. Hesling moved to amend her complaint to add a claim, under 42 U.S.C. § 1983, against Dr. Seidenberger, in his official capacity as former Superintendent of the District, for wrongful retaliation directed at Ms. Hesling because of her expressive activity protected by the First and Fourteenth Amendments.  Judge Angell denied the motion on July 1, 2004.

Ms. Hesling's objection to Judge Angell's ruling is now before this court.  To ward off an impending statute of limitations, Ms. Hesling has also filed her proposed amendment as a separate, additional action—*Hesling v. Seidenberger.*

### 3. Hesling v. Seidenberger, #04-4874

In October 2004, Ms. Hesling filed this action against Dr. Seidenberger in his official capacity.  The complaint's factual allegations are largely the same as those asserted in *Hesling v. Massaro*, and center around the alleged harm done by the Stretton

Letter.  The complaint asserts that the claims "arose when the Defendants in the action no

03-5795 [i.e., the administrators named in *Hesling v. Massaro*], acting alone and/or in

conjunction with each other publicly retaliated" against Ms. Hesling.  Complaint in

*Hesling v. Seidenberger* ("Compl. III") at 2 (¶ 1); *see also id.* ¶ 25.  As distinct from

*Hesling v. Massaro*, the complaint here seeks to hold Dr. Seidenberger responsible for his

role "in providing the administrators with information they used in their letter to the

editor, his failure to take appropriate action once he learned of the administrators'

intention of sending the letter to the editors and/or upon receiving Ms. Hesling's e-mail

on November 20, 2002, accusing the administrators of retaliation."[5]  *See* Compl. III at 2

(¶ 1).

Specifically, the complaint alleges that Dr. Seidenberger was shown the Stretton

Letter before it was sent to any newspaper; that Dr. Seidenberger told Dr. Massaro of Ms.

Hesling's role in Project COPE and that this information was incorporated into the

Stretton Letter; and that Dr. Seidenberger did not have any significant disagreement with

Ms. Hesling's September 26th article, but that he nonetheless did not object to the

administrators' sending of the Stretton Letter and took no disciplinary action against the

administrators responsible for it.[6]

_____

[5] There are points at which the complaint refers to "defendants"––in the plural –
and seems to be referring to the administrators named in *Hesling v. Massaro*, rather than
Dr. Seidenberger or the District.

[6] Ms. Hesling also alleges that Dr. Seidenberger suggested to Dr. Massaro that the
administrators should hire a lawyer.  *See* Pl.'s Resp. at 3-4 (citing deposition testimony of

Ms. Hesling contends that through his actions and inactions Dr. Seidenberger violated the IDEA, Section 504, and ADA, as well as rights protected by the First and Fourteenth amendments and 42 U.S.C. § 1983.

## II. Defendant's Motion to Dismiss,
## or Alternatively Motion for Summary Judgment, in *Hesling v. Seidenberger*

**A. Background**

Defendant's motion was filed two months after Ms. Hesling commenced this suit. Because factual discovery in *Hesling v. Avon Grove School District* and *Hesling v. Massaro*—the other cases with which *Hesling v. Seidenberger* has been consolidated for pre-trial purposes—has been completed, Dr. Seidenberger asks that this court consider evidence outside the pleadings, set forth in those cases. Ms. Hesling does not object. I find that defendant's motion is appropriately converted into a summary judgment motion.

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

Dr. Massaro). However, there is no evidence that this occurred in the context of retaliation against Ms. Hesling or in response to Ms. Hesling's article. Rather, all available evidence suggests that any such recommendation, if made, was in connection with an ongoing dispute between administrators and the School Board, more generally.

Finally, Ms. Hesling's restatement of the facts in her response to Dr. Seidenberger's motion to dismiss alludes to the October 17th meeting between Dr. Seidenberger and Mr. Rellahan. *See* Pl.'s Resp. at 3; *see also id.* 10-11. She describes it as one of "several facts that constitute pretext or otherwise suggest that retaliation was part of the reason for the letter to the editor." *Id.* at 33.

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  "The judge must ask . . . whether a fair-minded jury could return a verdict for the [non-moving] party on the evidence presented. . . . The judge's inquiry therefore, unavoidably, asks whether reasonable jurors could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *see Lujan v. Nat'l Wildlife Found.*, 497 U.S. 871, 888 (1990) (noting that the non-movant cannot avoid summary judgment by "replac[ing] conclusory allegations of the complaint . . . with conclusory allegations of an affidavit").  In making this determination, the court must view facts in the light most favorable to the non-moving party and must resolve any reasonable doubt as to the existence of a genuine issue of fact against the moving party. *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir. 1982); *see also Hunt v. Cromartie*, 526 U.S. 541 (1999) (finding that even when facts are undisputed, if probative reasonable inferences can be drawn in favor of either party, summary judgment should not be granted).  The court's role is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue of fact for trial." *Anderson*, 477 U.S. at 249; *see also Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 151 ("the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses'") (quoting Wright &

Miller at 300).

**B. Discussion**

<u>1. Defenses Based on the Allegedly Duplicative Nature of the Litigation</u>

Dr. Seidenberger first argues that because of variations among Ms. Hesling's three complaints—particularly, variations with regard to Dr. Seidenberger's alleged role in the hiring of Mr. Stretton—the doctrines of quasi-estoppel or judicial estoppel bar the instant action.  In essence, quasi-estoppel or judicial estoppel precludes a party from asserting, to another's disadvantage, a position inconsistent with a position previously taken by said party.  The doctrines require an unambiguous demonstration of mutual exclusivity.  *See, e.g.*, *Bates v. Long Island R.R. Co.*, 997 F.2d 1037 (2d Cir. 1993); *Erie Telecommunications Inc. v. City of Erie*, 659 F.Supp. 580 (W.D. Pa. 1987).  Defendant overstates the variance among the complaints: the scenarios alleged are somewhat discrepant, but they shade into one another.  The requisite mutual exclusivity has not been established.  Moreover, while discovery has been completed in *Hesling v. Avon Grove School District* and *Hesling v. Massaro*, the evidence produced is largely testimonial.  At this time, it is not beyond the realm of possibility that inferences could be drawn to support  allegations in any one of the complaints presented.  *Cf. Motley v. New Jersey State Police*, 196 F.3d 160, 163-64 (3d Cir. 1999).  The doctrines of quasi-estoppel or judicial estoppel do not apply to bar the instant case.

Dr. Seidenberger also argues that lawsuits under § 1983 are "not viable [against]

an individual acting in his or her official capacity." Mot. to Dismiss at 14.  This argument

is without merit.  *See, e.g.*, *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005); *Doby*

*v. DeCrescenzo*, 171 F.3d 858 (3d Cir. 1999); *see also Leach v. Shelby County Sheriff*,

891 F.2d 1241, 1245-46 (6th Cir. 1989) (construing a case against the mayor and sheriff

in their official capacities as a suit against the county itself).[7]

Next, Dr. Seidenberger asserts that this suit should be dismissed because it is

duplicative of the Heslings' action already pending against the District.  *See* Mot. to

Dismiss at 15-16.  Dr. Seidenberger is correct that this suit is effectively a suit against the

District.  *See Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978).  Nonetheless, this does

not provide a clear basis for requiring dismissal of Ms. Hesling's complaint at this

time—to date, no final judgment has been reached in any of Ms. Hesling's three cases.[8]

Further, Dr. Seidenberger argues that the District is a necessary party and must be

joined in the instant action.  *See* Mot. to Dismiss at 16 (citing Fed. R. Civ. Pro. 19).  The

Supreme Court has explained that "[a]s long as the government entity receives notice and

---

[7] Dr. Seidenberger points to several cases which were brought against both an
entity and an individual in his official capacity, in which the case against the latter was
dismissed.  However, these cases do not suggest that a case which names only the
individual in his official capacity, as in *Hesling v. Seidenberger,* should be dismissed.

[8] When it comes to dismissing a suit as duplicative, the district court has "'a great
deal of latitude and discretion.'" *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th
Cir. 1993) (quoting *Ridge Gold Standard Liquors v. Seagram*, 572 F. Supp. 1210, 1213
(N.D. Ill. 1983).  The nature of the present litigation—with all three cases pending before
this court—does not counsel dismissal.

an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)).  I am satisfied that the District has been given sufficient notice and opportunity to respond, and thus is already adequately recognized as the "real party in interest."  *Cf. Leach*, 891 F.2d at 1245-46 (adjudicating suit in which government entity was not named).

    2. Other Defenses

        (a) Alleged Violations of Ms. Hesling's First and Fourteenth Amendment Rights under 42 U.S.C. § 1983

    The second count of Ms. Hesling's complaint asserts that Dr. Seidenberger "knew or should have known that the administrators' letter to the editor was an act of unlawful retaliation by the administrators."  Compl. III ¶ 44.  Further, the complaint charges that his failure to prevent the sending of the Stretton Letter and his failure to discipline the administrators "amount[] to an affirmation or ratification of their actions."  *Id.*  Ms. Hesling alleges that, pursuant to 42 U.S.C. § 1983, Dr. Seidenberger is therefore liable, in his official capacity as Superintendent, under the First and Fourteenth Amendments.  *Id.*

    To establish a § 1983 claim in an official-capacity suit, the plaintiff must show that the defendant personally engaged in deprivation of one of her federal rights and that the "moving force" behind the deprivation was an official policy or custom of the municipal

14

entity—here, the District.  *See Polk v. County of Dodson*, 454 U.S. 312, 326 (1981).

Alternatively, a municipal entity can be held responsible where there is a failure to train

or supervise employees, which reflects the deliberate indifference of officials to the rights

of people who come in contact with those employees and which results in a deprivation of

plaintiff's federal rights.  *See City of Canton v. Harris*, 489 U.S. 378, 387, 391 (1989)

(noting that "[t]o adopt lesser standards of fault and causation would open municipalities

to unprecedented liability under § 1983").  "Failure to adequately [train or supervise]

employees can ordinarily be considered deliberate indifference only where the failure has

caused a pattern of violations."  *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir.

2000).[9]

     The first step in assessing a § 1983 suit "is to identify the specific constitutional

right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  The First

Amendment right to free speech includes the right to be free from retaliation by a public

official for the exercise of that right.  To establish a claim that a public official has

---

[9] The district court concisely explained in *McDowell v. Government of Dist. of Columbia*, 233 F.R.D. 192 (D.D.C. 2006):

> Liability only attaches, however, if plaintiff can prove that the municipality itself caused the alleged constitutional violation.  Such proof exists in the form of 'an official policy or custom,' including a municipality's failure to adequately train or supervise its employees, where such failure rises to the level of 'deliberate indifference.'  In order to prove that defendants have a policy of deliberate indifference, plaintiff needs to show that the behavior complained of was widespread.

*Id.* at 11 (internal citations omitted).

retaliated against a private citizen in violation of the First Amendment, it must be shown that: (1) the private citizen engaged in protected conduct or speech; (2) the public official took adverse action against the citizen; and (3) the adverse action was prompted or caused by the citizen's exercise of First Amendment rights.  *See, e.g.*, *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 431 (E.D.Pa. 2000); *Uniontown Newspapers, Inc. v. Roberts*, 576 Pa. 231 (Pa. 2003).  *See generally Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).  The Third Circuit has defined an "adverse action" as conduct "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000).

Ms. Hesling's invocation of IDEA due process proceedings for her children, if not her legal advocacy more generally, constituted a protected activity.  *Cf.  Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1987) (holding that filing of an EEOC complaint and employment discrimination suit were protected under the First Amendment, given the right to petition the government for grievances).  I am not, however, entirely persuaded that Ms. Hesling has alleged actions by Dr. Seidenberger which rise to the level of "adverse action" and which can be causally linked to her advocacy efforts.[10]

_____

[10] Ms. Hesling describes the Stretton Letter as the source of her injuries, but has not proffered evidence that Dr. Seidenberger played any role in the commissioning of the letter, *see supra* note 6, or any substantial role in the development of the letter.  The record indicates that Mr. Stretton, an independent lawyer, was hired and paid by a number of District administrators (acting in their individual or personal capacities), not including Dr. Seidenberger.  Dr. Seidenberger's alleged contribution to the letter—telling Dr. Massaro of Ms. Hesling's involvement in Project COPE—can only be described as

16

But even assuming that Ms. Hesling has adequately alleged retaliation by Dr.

_____

minimal. Ms. Hesling's claim that Dr. Seidenberger is liable for his failure to prevent the Stretton Letter from being published or to discipline those responsible may also run up against a First Amendment problem of its own. *See* Mot. to Dismiss at 19-21 & n.7 (citing Pickering v. Bd. of Educ. Tp. High School, 391 U.S. 563 (1968)).

Moreover, evidence—either direct or indirect—of causation is lacking. There is evidence that Dr. Seidenberger was aware of the Heslings' due process proceedings and Ms. Hesling's special education advocacy more generally. Testimony from a former Board member suggests that Dr. Seidenberger was antagonistic to the family's appeals under the IDEA. *See* Pl.'s Resp., App. Ex. O. However, there is no testimony suggesting an ongoing pattern of hostility or evidencing a connection between Dr. Seidenberger's adversarial feelings about the Heslings' IDEA proceedings and Ms. Hesling's reporting. A jury might infer some support for causation from the timing of events, but timing alone is generally not enough. As Ms. Hesling's own memorandum notes, "[w]ith one exception, the Third Circuit has never held that timing alone can be sufficient to establish causation." Pl.'s Resp. at 30.

Ms. Hesling argues that Dr. Seidenberger did not dispute the September 26th article, and that therefore his subsequent actions or inactions must have been motivated by a felt need to counter Ms. Hesling's advocacy work, or at least that he must have recognized that the administrators were so motivated. *See* Pl.'s Resp. at 26, 33. Ms. Hesling's interpretation of Dr. Seidenberger's deposition testimony is debatable, *see, e.g.*, Pl.'s Resp., App. Ex. F. at 139-41, but even if assumed to be correct, this sample of deductive reasoning is unpersuasive, and does not satisfy the standard at summary judgment. The Stretton Letter attacked Ms. Hesling's reporting as biased, in light of her interaction with the District on special education issues. That is distinguishable from attacks leveled against her reporting—namely her September 26th article—because of the advocacy itself. In other words, Dr. Seidenberger could have taken issue with a perceived conflict of interest generally, without contesting the September 26th article specifically.

While the question of whether Ms. Hesling has adequately alleged retaliation by Dr. Seidenberger has not been resolved, the prevalence of the allegation is noted: in subsequent counts of her complaint, Ms. Hesling claims that she was entitled to certain procedural rights under the IDEA, ADA, and Section 504, and that Dr. Seidenberger violated those rights by retaliating against her for asserting her children's substantive rights. *See* Compl. III ¶¶ 40, 50, 55. Since those claims are similarly premised upon the assertion that Dr. Seidenberger was responsible for retaliation against Ms. Hesling, the question of whether Ms. Hesling has alleged a cognizable retaliation claim is relevant to them as well.

Seidenberger, her complaint does not satisfy the requirements for a § 1983 claim.  Ms.

Hesling does not adequately allege or offer evidence of a policy of retaliation by the

District against Ms. Hesling or others similarly situated.[11]  While Ms. Hesling notes that

in some instances a "policymaker's approval of an unconstitutional action can constitute

unconstitutional . . . policy," this is only true "when the policymaker approve[s] a

subordinate's decision *and the basis for it*." *Gattis v. Brice*, 136 F.3d 724 (11th Cir. 1998)

(internal quotations omitted) (emphasis in original).  There is no evidence here that Dr.

Seidenberger was aware of improper motives on the part of the other District

administrators.  *See also supra* note 10 (discussing Ms. Hesling's argument that this

necessarily follows from Dr. Seidenberger's alleged concession that he did not dispute the

September 26th article).

Moreover, Ms. Hesling's allegations fall short of establishing that Dr.

Seidenberger's failure to supervise the District administrators involved in the Stretton

Letter reflected deliberate indifference to her First Amendment rights.  As noted earlier,

deliberate indifference is typically only found "where the failure has caused a pattern of

violations." *Berg*, 219 F.3d at 276; *Kadetsky v. Egg Harbor Tp. Bd. of Educ.*, 164 F.

Supp. 2d 425 (D.N.J. 2001).[12]  No such pattern of violations, retaliatory or otherwise, is

---

[11] Ms. Hesling's contention that Dr. Seidenberger, as Superintendent, was a policymaker is accepted for the purposes of deciding this motion.

[12] The Third Circuit has acknowledged that it may be "possible to maintain a claim of failure to train"—akin to a claim for failure to supervise—"without demonstrating such

described.  Rather, Ms. Hesling alleges that "background" events and comments "show[]

that [Dr. Seidenberger] was deliberately indifferent to Ms. Hesling's First Amendment

Rights." Pl.'s Resp. at 36.  Ms. Hesling alleges the following:

> Given the background of 1) his comments about making an example of the
> Heslings to deter other parents with special needs children, 2) his anger at
> the ALJ and appeals panel's decision in the Heslings favor, 3) his
> accusation that Ms. Hesling somehow fabricated the ALJ's decision, 4) his
> refusal to respond to the Heslings' complaint about the school psychologist,
> 5) his effort to go to the editors of the newspaper to have Ms. Hesling
> investigated for a lapse of journalistic ethics over the article, especially after
> she had previously written several articles for the paper with no prior
> complaint from him or any other member of the School Board, 6) his
> contention that he had no problem with the accuracy of the article Ms.
> Hesling wrote, and 7) his assistance to the administrators of providing
> information to them about Ms. Hesling's advocacy efforts, his failure to
> stop the administrators from sending the letter or from taking disciplinary
> action against them after it was sent, shows that he was deliberately
> indifferent to Ms. Hesling's First Amendment Rights.

*Id.*  While the various "background" elements listed by Ms. Hesling suggest that Dr.

Seidenberger was unsympathetic to Ms. Hesling's advocacy on behalf of her children,

---

a pattern . . . [but] the burden on the plaintiff in such a case is high." *Berg*, 219 F.3d at
276 (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997)). The
Supreme Court has "hypothesized that, in a narrow range of circumstances, a violation of
federal rights may be a highly predictable consequence of a failure to [train personnel in a
particular way]" and then the "likelihood that the situation will recur and the
predictability . . . could justify a finding that policymakers' decision not to train
[personnel] reflected 'deliberate indifference' to the obvious consequence of the
policymakers' choice." *Bryan County*, 520 U.S. at 409; *see also Pembaur v. City of
Cincinnati*, 475 U.S. 469, 480-81 (1986). Ms. Hesling has not explained how or why the
instant case might fit within the "narrow range of circumstances" in which a single
incident suffices, and I do not find that the situation presented so qualifies.

they do not have demonstrable bearing on the intent with which Dr. Seidenberger refrained from (1) stopping his fellow administrators from publishing the Stretton Letter and/or (2) taking disciplinary action against them after the Letter was sent.

Given the absence of evidence of deliberate indifference on the part of Dr. Seidenberger, Ms. Hesling has failed to state a claim against him, pursuant to 42 U.S.C. § 1983, for violations of her rights under the First and Fourteenth Amendments.  Therefore, the second count of her complaint will be dismissed.

(b) Alleged Violation of Ms. Hesling's Rights under the IDEA and attendant 42 U.S.C. § 1983 claim

The first count of Ms. Hesling's complaint alleges that Dr. Seidenberger violated her rights under the IDEA and its implementing regulations by retaliating against her for asserting her children's legal rights "*inter alia*, by his failure to prevent the administrators from sending the letter to the editors and/or his failure to discipline the administrators for their act of sending the letter amounts to an affirmation or ratification of their actions." Compl. III ¶ 40.   Ms. Hesling alleges that this amounted to deliberate indifference toward Ms. Hesling's rights.  *Id.*

I note that, in count one, Ms. Hesling asserts that Dr. Seidenberger is subject to liability "in his official capacity as superintendent under the anti-retaliation provisions of the IDEA in violation of 42 U.S.C. § 1983." *Id.* ¶ 41.  Separately, count five of the complaint requests relief under 42 U.S.C. § 1983 based on violations of the IDEA, as well

20

as alleged violations of the ADA and Section 504.  Therefore, count one will be treated as

bringing a claim directly under the IDEA for damages and declaratory relief––otherwise it

is merely duplicative of count five.

### (i) The Relief Sought

In count one, the relief sought by Ms. Hesling includes a declaratory judgment and

compensatory damages.  *Id.* at 12.[13]  The case law is clear that various forms of equitable

relief, including the issuance of a declaratory judgment, can be obtained through the

IDEA's administrative proceedings.  But whether damages are available is not clear.  A

number of Circuit Courts have held that compensatory and punitive damages—as

opposed to equitable remedies, such as reimbursement or other restitution—are not

available in actions brought directly under the IDEA.  *See, e.g.*, *Nieves-Márquez v. Puerto

Rico*, 353 F.3d 108, 125 (1st Cir. 2003); *Polera v. Bd. of Educ. of the Newburgh Enlarged

City Sch. Dist.*, 288 F.3d 478, 483-86 (2d Cir. 2002); *Witte v. Clark County Sch. Dist.*,

197 F.3d 1271, 1275 (9th Cir.1999); *Sellers by Sellers v. School Bd.*, 141 F.3d 524,

526-27 (4th Cir.1998); *Charlie F. by Neil F. v. Board of Educ.*, 98 F.3d 989, 991 (7th

Cir.1996); *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir.1996); *see also Whitehead

v. School Board of Hillsborough County*, 918 F. Supp. 1515 (M.D. FL 1996) (holding, in

case involving parents who were retaliated against by their school district for their

---

[13] Count five, for which Ms. Hesling seeks the same relief under § 1983, is
discussed *infra*.

advocacy on behalf of their child, that compensatory damages for retaliation were available under Section 504 but not under the IDEA).  The Third Circuit has not settled the question.  *See C.M. v. Board of Educ. of Union County Regional High Sch. Dist.*, 128 Fed. Apex. 876, 880 (3d Cir. 2005); *Bucks County Dep't of Mental Health v. Pennsylvania*, 379 F.3d 61, 68 n.5 (3d Cir. 2004); *Polera*, 288 at 485 (noting that the Third Circuit has "addressed the issue without endorsing the view that damages are never available under the IDEA"); *see also Smith v. Phila. Sch. Dist.*, 679 F. Supp. 479 (E.D. Pa. 1988) (holding that the EHA, predecessor to the IDEA, provides no cause of action for emotional or physical damages).

### (ii) Standing

20 U.S.C. § 1415(I) authorizes a private cause of action where a party has been "aggrieved by the findings and decision" of the IDEA's administrative process.  20 U.S.C. § 1415(i)(2)(A)  (providing that the aggrieved party "shall have the right to bring civil action with respect to the complaint presented [in the administrative process]"). Exhaustion of the statute's administrative proceedings is required for civil actions brought under the IDEA, as well as for actions brought under other federal laws where the relief sought is also available under the IDEA.  *See id.* § 1415(i)(2)(A), (*l*); *see also Jeremy H. by Hunter v.  Mt. Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996).

While the Third Circuit has not addressed retaliation suits brought by parents under the IDEA, other circuits have found that parents have standing to bring suits to

22

protect their procedural rights under the IDEA.  *See, e.g.*, *Weber v. Cranston Sch. Comm.*,

212 F.3d 41 (1st Cir. 2000); *Mosely v. Board of Educ. of City of Chicago*, 434 F.3d 527

(7th Cir. 2006); *see also* 20 U.S.C. § 1415(i)(2)(A).

   In *Weber v. Cranston School Committee*, the First Circuit reviewed the language

and structure of IDEA, and determined that a parent's retaliation claim fell within the

zone of interests protected by the IDEA:

>  That review reveals the central role played by parents in assuring that their
>  disabled child receives a "free appropriate public education," 20 U.S.C. §
>  1400(d)(1)(A). The IDEA statement of purposes explicitly recognizes the
>  statute's mission "to ensure that the rights of children with disabilities *and
>  parents of such children* are protected." Id. § 1400(d)(1)(B)(emphasis
>  added). . . .  In sum, Weber's claim easily meets the "arguably within the
>  zone of interests" standard, and she would have standing under IDEA to
>  bring her retaliation complaint.
>
>  Furthermore, the IDEA complaint provision in subchapter II affords the
>  "opportunity to present complaints with respect to *any* matter *relating to* the
>  identification, evaluation, or educational placement of the child, or the
>  provision of a free appropriate public education to such child." See id.§
>  1415(b)(6) (emphasis added). Weber's claim of retaliation is literally
>  "related" to the "identification, evaluation, or educational placement of
>  [her] child," and to her efforts to gain for him "the provision of a free
>  appropriate public education."

*Weber,* 212 F.3d at 51.  I find the detailed reasoning presented in *Weber* persuasive and

conclude that a parent may pursue the remedies available under the IDEA, in federal

court, for retaliation which violates his or her rights under the IDEA, assuming the

statute's exhaustion requirement has been addressed.

                    (iii) Exhaustion

                           23

While Ms. Hesling pursued administrative remedies for claims revolving around her children's substantive educational rights under the IDEA, she never sought administrative remedies for her retaliation claim.  A plaintiff need not exhaust "if she can show that the agency's adoption of an unlawful general policy or practice would make resort to the agency futile, or that the administrative remedies afforded by subchapter II of IDEA are inadequate given the relief sought." *Weber*, 212 F.3d at 52.  In the instant case, Ms. Hesling does not suggest that any unlawful general policy or practice was adopted, nor does she show that the remedies she sought were unavailable.[14]  She seeks to rely on *W.B. v. Matula*—a Third Circuit case in which parents were allowed to bring a suit under §1983, predicated on an IDEA violation, without exhausting the IDEA's administrative proceedings.  *W.B.*, 67 F.3d 484, 495-96 (3d Cir. 1995).  The court reasoned, in part, that exhaustion was not required because the only relief sought—compensatory damages—was unavailable in the IDEA administrative proceedings in that particular

---

[14] The court in *Weber* hypothesized that since the regulations regarding due process hearings under IDEA "do not appear to read 'related' broadly," it is possible that "a hearing officer might refuse to consider a [parent's] claim of retaliation."  212 F.3d at 52 (citing 34 C.F.R. §§ 300.503, 300.507 and state regulations).   However, like Ms. Weber, Ms. Hesling "does not point to  . . .  regulations or (anything else) to establish that the relief she seeks is not available because the regulations limit the scope of the due process hearing provided by IDEA.  Nor does she argue that pursuing a due process hearing would be unduly burdensome due to the school district's purportedly retaliatory tactics."  *Id.*  The First Circuit declined to construct such arguments for the plaintiff, and I see no reason to follow a different course.

case. *Id.* at 496.[15]  Also central to the court's decision was the fact that the parties had already participated in various administrative proceedings addressing the substantive issues at stake in the case and the only unresolved issue was whether damages should be awarded.  *Id.*; *see also Falzett v. Pocono Mountain Sch. Dist.*, 150 F. Supp. 2d 699, 704 (M.D. Pa. 2001) (discussing the case-specific concerns affecting the outcome in *W.B.*).

The Third Circuit's determination that exhaustion was excused in *W.B.* is not controlling here, as at least part of the relief sought by Ms. Hesling—declaratory relief for violation of her rights under the IDEA—is available through the statute's administrative proceedings.  *Cf. Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985).  In light of the availability of some of the relief sought, exhaustion is required. The district court in *Falzett* reached the same conclusion where the plaintiffs sought both damages and tuition reimbursement:

> The fact that the Falzetts are seeking tuition reimbursement means that, unlike the plaintiffs in *W.B.*, the Falzetts are clearly "seeking relief that is also available" under the IDEA. 20 U.S.C. § 1415( l). Under these circumstances the conclusion is inescapable that the Falzetts must exhaust the available administrative procedures before bringing suit in this court.
>
> The court recognizes that *W.B.* could be understood to require the dismissal of the Falzetts' tuition reimbursement claim but not their damages claim. Under this reading of *W.B.*, the exhaustion requirement should be excused as to unavailable remedies but not as to available ones. However, reading *W.B.* to espouse a remedy-by-remedy exhaustion analysis would be

---

[15] As noted earlier, the Third Circuit—including the *W.B.* court—has not decided the larger question of whether damages are ever available under the IDEA.  *See Bucks County Dep't of Mental Health*, 379 F.3d at 68 n.5.

inconsistent with the exhaustion doctrine's purpose of ensuring that judicial decisions are rendered in light of administrative factfinding, an explicit concern of the *W.B.* court, as it would permit IDEA plaintiffs to bring their damages claims to federal court prior to administrative consideration of their other claims. It would also clash with the doctrine's purpose of avoiding the judicial inefficiency involved in resolving disputes in piecemeal fashion.

Moreover, the plain language of § 1415( l) states that exhaustion of IDEA administrative "procedures" is required "before the filing of a civil action." 20 U.S.C. § 1415( l). Notably, the statute does not say that each remedy sought must be exhausted before that remedy is pursued in court, but that IDEA administrative procedures must be exhausted before a civil action is filed to vindicate the educational rights of a handicapped child. This language precludes any interpretation of *W.B.* and § 1415( l) under which exhaustion is judged with respect to each individual remedy sought by the plaintiff, *accord Booth v. Churner*, 531 U.S. 956, 121 S.Ct. 1819, 1824, 149 L.Ed.2d 958 (2001) ("[i]t makes no sense to demand that someone exhaust 'such administrative [redress]' as is available; one 'exhausts' processes, not forms of relief"), and implies that the entire action must be dismissed for lack of subject matter jurisdiction whenever any part of the dispute might be resolved at the administrative level, *see Thorp v. Kepoo*, 100 F. Supp. 2d 1258, 1263 (D.Haw. 2000) ("Use of the term 'action' in the [exhaustion provision] suggests that the entire case is not ripe until those portions of the suit that may be exhausted have been.").

*See Falzett*, 150 F. Supp. 2d at 705-06.[16]

---

[16] The district court in *Falzett* was "tempted" to go further in its analysis "to conclude that recourse to IDEA administrative procedures is required . . . whenever those administrative procedures are capable of providing relief to the plaintiff," but found that it was sufficient in that case to "conclude that recourse to IDEA administrative procedures is required prior to the filing of an action . . . where the complaint seeks relief that is available through the administrative process." 150 F. Supp. 2d at 706; *see also Polera*, 288 F.3d at 487-88 (requiring exhaustion where plaintiff sought both compensatory damages—which the Second Circuit held to be unavailable in administrative proceedings under the IDEA—and equitable relief, based on the rationale that it was not the nature of the relief sought by the plaintiff which was dispositive, but rather whether the administrative proceeding could provide any appropriate relief).

Thus, Ms. Hesling comes before this court in an unacceptable posture for an IDEA claim—she is not presently "aggrieved by the findings or decision" of the IDEA's administrative process, and, while she bears the burden to do so, she has not presented any compelling argument that exhaustion should be excused.  Therefore, count one of her complaint will be dismissed.

In count five of her complaint, Ms. Hesling asserts an attendant claim under § 1983 for violation of the IDEA (as well as claims under § 1983 for violations of the ADA and Section 504, discussed *infra*).  She seeks both monetary damages and declaratory relief for violation of § 1983.  Here again, some of the relief Ms. Hesling seeks is available under the IDEA and exhaustion is therefore required for Ms. Hesling to proceed with this claim.  *Cf. W.B.*, 67 F.3d at 495 (finding that money damages are available in a § 1983 action premised on a violation of the IDEA, but "observ[ing] that the exhaustion requirement may not be circumvented by casting an IDEA claim as a § 1983 action predicated on IDEA").  Accordingly, the IDEA aspect of count five will also be dismissed.

(c) Alleged Violation of Ms. Hesling's Rights under Section 504, the ADA, and 42 U.S.C. § 1983

The third and fourth counts of Ms. Hesling's complaint allege similar violations of Section 504 and the ADA, respectively.  The fifth and final count again sets out the attendant claims under 42 U.S.C. § 1983.  Ms. Hesling seeks declaratory relief and

27

compensatory damages under Section 504 of the Rehabilitation Act and the ADA, as well as § 1983 claims premised upon both of those statutory claims.

There is no question that Ms. Hesling has standing to bring claims of retaliation due to special education advocacy against Dr. Seidenberger in his official capacity under Section 504's and the ADA's anti-retaliation provisions. *See, e.g.*, *Weber*, 212 F.3d 41 (Section 504, with lengthy explanation); *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002) (ADA and Section 504); *Whitehead*, 918 F. Supp. at 1515 (Section 504); *Sturm v. Rocky Hill Bd of Ed*, 2005 WL 733778 (D. Conn. Mar. 29, 2005) (Section 504); *Child v. San Bernardino Unified Sch. Dist.*, 35 Fed. Apex. 521 (9th Cir. 2002) (ADA and Section 504).

Section 504's implementing regulations prohibit retaliation against any person for the purpose of interfering with their rights, or because of their filing of a complaint or participation in an investigation. *See* 34 C.F.R. §100.7(e); 28 C.F.R. § 42.503(b)(1)(vii); *see also Weber*, 212 F.3d at 47-49 (explaining that the Rehabilitation Act was amended in 1978 to incorporate the "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964," and noting that the anti-retaliation regulation adopted pursuant to Title VI applies to any right or privilege secured by the Rehabilitation Act). Similarly, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an

28

investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a); *see also*

28 C.F.R. § 35.134 (stating "[n]o private or public entity shall coerce, intimidate,

threaten, or interfere with any individual in the exercise or enjoyment of, or on account of

his or her having exercised . . . any right granted or protected by the Act").

However, once again the exhaustion requirement remains unsatisfied, since

retaliation claims were never raised at IDEA due process hearings.  As noted *supra*,

exhaustion under the IDEA is required by 20 U.S.C. § 1415(f) if the plaintiff seeks relief

also available under the IDEA, even if brought pursuant to another federal law.  While it

remains unclear whether the compensatory damages sought are available under the IDEA,

a declaratory judgment is available under the IDEA, and this is sufficient in this case to

render exhaustion necessary.  Therefore, the third and fourth counts of Ms. Hesling's

complaint will be dismissed.  Because Ms. Hesling's § 1983 claims premised upon her

ADA and Section 504 claims—and presented in count five—cannot be viable where the

underlying claims fail, they too must fail.  *See, e.g.*, *Clark v. Link*, 855 F.2d 156, 161 (4th

Cir. 1988).[17]

### III. Plaintiff's Motion for Leave to Amend
### Her Complaint in *Hesling v. Massaro*

In May 2004, plaintiff sought to amend her complaint in *Hesling v. Massaro* to add

---

[17] Moreover, there is an alternate basis for dismissal of Ms. Hesling's § 1983
claims in count five—her failure adequately to allege an official policy or pattern of
violations, *see* discussion *supra*.

claims against Dr. Seidenberger in his former official capacity as Superintendent for retaliation under 42 U.S.C. § 1983.  Judge Angell denied plaintiff's motion.

Where, as here, a party must have leave of the court to amend a pleading, Rule 15 of the Federal Rules of Civil Procedure provides that "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Thus, leave to amend is often freely available. However, this liberal granting of leave is warranted only "when justice so requires."  *Id.* Where justice appears to require the opposite result, Rule 15 permits the court, in its discretion, to deny leave to amend.

"Prejudice to the non-moving party is the touchstone for the denial of an amendment." *Bechtel v. Robinson*, 886 F.3d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). The Third Circuit has defined prejudice, in this context, as "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party." *Deakyne v. Comm'ners of Lewes*, 416 F.2d 290, 300 (3d Cir. 1990).  Other factors that could lead to the denial of leave to amend "are undue delay, bad faith, dilatory motive . . . and futility." *In re Burlington Coat Factor Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see Foman v. Davis*, 371 U.S. 178 (1962). Futility is a basis for denying leave "when the proposed amendment would not sufficiently set forth a claim upon which relief could be granted," *Klitzner Industries, Inc. v. H.K. James & Co.*, 96 F.R.D. 614, 617 (E.D. Pa. 1983), or, more generally,  if it would not withstand a motion to dismiss,

*Massarsky v. Gen. Motors Corp.*, 706 F.2d 111 (3d Cir. 1982).

Plaintiff has argued that although her motion was filed after discovery had closed, this would not prejudice the defendants because the claim against Dr. Seidenberger would not require additional discovery. Plaintiffs' memorandum argues that Dr. Seidenberger's deposition, which has already been taken, would suffice. Of course, this does not give any indication of what additional discovery the defendant might wish to undertake. In response, Dr. Seidenberger argues that the proposed amendment would be futile and would yield unfair prejudice, and that there was undue delay in requesting leave to amend.

I conclude that Ms. Hesling's proposed amendments would be futile, as they would be subject to dismissal for the reasons described *supra*, *see* Subsection II.B.2. Therefore, plaintiff's objections to Judge Angell's ruling will be overruled.

### Conclusion

For the reasons stated herein, in the attached order, defendant's motion for summary judgment in *Hesling v. Seidenberger* will be granted, and Judge Angell's denial of leave to amend the complaint in *Hesling v. Massaro* will be affirmed.

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD AND CHRISTINE HESLING, | CIVIL ACTION |
| Plaintiffs | No. 02-8565 |
| v. | |
| THE AVON GROVE SCHOOL DISTRICT, | |
| and | |
| THOMAS SEIDENBERGER, former Superintendent of the Avon Grove School District, in his individual capacity, | |
| Defendants | |

| | |
|---|---|
| CHRISTINE HESLING, | CIVIL ACTION |
| Plaintiff | No. 03-5795 |
| v. | |
| AUGUSTUS MASSARO, et al., | |

Defendants

CHRISTINE HESLING,

                    Plaintiff                                    CIVIL ACTION

     v.
                                                                No. 04-4874
THOMAS SEIDENBERGER, in his
official capacity as Superintendent for
the Avon Grove School District,

                    Defendant

**ORDER**

     April 17, 2006

     For the reasons stated in the foregoing opinion, it is hereby ORDERED that:

defendant's motion for summary judgment in *Hesling v. Seidenberger* is GRANTED, and

Judge Angell's denial of leave to amend the complaint in *Hesling v. Massaro* is

AFFIRMED.

                                                  /s/ Louis H. Pollak

                                                  J., Pollak